Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edward A. Bobrick | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 819 | **DATE** | 9/4/2001 |
| **CASE TITLE** | Giselle Christopher Hyland vs. Indicator Lites, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Order. Plaintiff's motion for an award of attorneys' fees and costs is granted in the amount of $40,620.20 in fees and $392.62 in costs, and defendant is hereby ordered to pay same.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 05 2001 | |
| | Notified counsel by telephone. | | date docketed | 43 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING 01 SEP -4 PM 3: 04 | 9/4/2001 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | TH6 mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GISELLE CHRISTOPHER HYLAND, )
)
Plaintiff, )
)
vs. ) No. 99 C 0819
) Edward A. Bobrick,
INDICATOR LITES, INC., ) Magistrate Judge
)
Defendant. ) DOCKETED
) SEP - 5 2001

## MEMORANDUM ORDER

Before the court is the motion of plaintiff Giselle Hyland for an award of attorneys' fees and costs in this case.

Plaintiff brought this action under Title VII, 42 U.S.C. §2000e *et seq.*, alleging pregnancy discrimination in violation of §2000e(k). Litigation began at the state agency level nearly six years ago when plaintiff filed a three-page complaint before the Illinois Human Rights Commission ("IHRC"). After a hearing, the IHRC determined that although plaintiff had been discriminated against, her subsequent misconduct barred her from receiving damages in the form of back pay or reinstatement. As the prevailing party, plaintiff sought an award of attorney's fees in the amount of $74,673.73, representing incurred fees of $41,682.25 times a "risk multiplier" of 1.75. After a review of plaintiff's petition, the IHRC awarded her just $10,480.50 in fees in April of 1998.

43

Plaintiff then turned to federal court in February of 1999 and continued to press her claim. After an exchange of interrogatories, the filing of some motions in limine, and the completion of a pre-trial order, the defendant was prompted to make an offer of judgment under Fed.R.Civ.P. 68[1] in the amount of $10,000 plus reasonable attorney's fees, shortly before the scheduled trial date. Plaintiff accepted and now, predictably, the parties are litigating the amount of fees due plaintiff's counsel. Plaintiff is seeking a total of $60,661.50 in fees, which represents the total amount of fees plaintiff claims to have incurred throughout the state and federal portions of her case, less the $10,480.50 she has already recouped.

## I. ANALYSIS

The parties here do not dispute that the "reasonable fee" mentioned in defendant's Rule 68 offer of judgment pertains to both federal and state proceedings, as the fee-shifting provision of Title VII specifically provides. 42 U.S.C. §2000e-5(k); *New York Gaslight Cub, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024 (1980). Under *Hensley v. Eckhart,* 461 U.S. 424, 103 S.Ct. 1933, (1983), "[t]he most useful starting point for

---

[1] Rule 68 provides that if a timely pretrial offer of settlement is not accepted and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." The plain purpose of Rule 68 is to encourage settlement and avoid litigation. *Marek v. Chesny,* 473 U.S. 1, 5, 105 S.Ct. 3012, 3014 (1985)(citations omitted) The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits. *Id.*

2

determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433, 103 S.Ct. 1933. This product is commonly referred to as the "lodestar."

The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. The determination of an attorney's "reasonable hourly rate" is to be based on the "market rate" for the services rendered; the burden of proving the "market rate" is on the fee applicant. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). Similarly, the fee applicant has the burden of proving the reasonableness of the hours expended. *Id.* at 550. The district court has an obligation to "exclude from this initial fee calculation hours that were not 'reasonably expended' " on the litigation. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. Once arriving at the "lodestar," the district court may then increase or reduce the modified lodestar amount by considering a variety of factors, *Hensley*, 461 U.S. at 434-35, 103 S.Ct. 1933, the most important of which is the "degree of success obtained." *Id.* at 436, 103 S.Ct. 1933.

## A. Lodestar Determination

At the outset, we note that the trial court is in the best position to determine the reasonableness of a fee award, given its familiarity with the case and the attorneys' work product. *Tenner v. Zurek*, 168 F.3d 328, 330 (7th Cir. 1998); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995). Unfortunately, this case has been before a few

3

judicial officers, and has spent just a brief part of its six-year history before this magistrate judge. Over two-hundred of counsel's billing entries now before the court for review represent work done before the IHRC. Consequently, we are forced to rely on the record before the IHRC and previous judges to make our determination as to a reasonable fee award. Surely, however, the attorneys who agreed to allow this court to determine a reasonable fee award rather than settling upon one themselves were aware of these handicaps.

It would appear that this case was not a complex matter, beginning as a three-page complaint in an administrative setting: the Illinois Commission on Human Relations.[2]

---

[2] Defendant briefly argues that collateral estoppel bars plaintiff from seeking fees for time spent before the IHRC. The IHRC awarded $10,480.50 in fees to plaintiff; plaintiff had sought $42,437.05. It is the defendant's burden to establish the applicability of issue preclusion. *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000). Here, the defendant essentially relies on *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220 (1986), which addressed issue preclusion in the context of both Title VII claims and claims under 42 U.S.C. §1983. The Court noted that the language of Title VII mandated that the EEOC give "substantial weight" to the findings of state and local authorities, and found that "it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." 478 U.S. at 795, 106 S.Ct. at 3224. The Court held that unreviewed state administrative proceedings – like the IHRC decision in the instant case – have no preclusive effect in federal Title VII claims. 478 U.S. at 796, 106 S.Ct. at 3225. For whatever reason, however, defendant focuses on that portion of the opinion dealing with §1983–which does not "remotely express[] any congressional intent to contravene the common-law rules of preclusion . . ." 478 U.S. at 3225, 106 S.Ct. at 3225. Defendant advances no argument as to why we

(continued...)

Once this matter made its way to federal court, no substantive motions were filed: just a few, very brief motions in limine. Nevertheless, plaintiff brought six attorneys to bear: Stein, Bagdade, Kahn, Ashman, Gilbert, and Berks. In this regard, we note that the Seventh Circuit has cautioned scrutiny against the tendency of law firms to overstaff a case. *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). The plaintiff submits that the hourly rates for these attorneys are: Ashman and Stein, $215; Bagdade and Gilbert, $195; Berks and Kahn, $165.

We begin our analysis with a glaring omission from the fee petition. From January 6, 1998, through May 11, 2001, there is no indication on any entry as to which of the six attorneys involved in this case performed the work cited. The majority of these entries are billed at the highest rate of the six attorneys, $215.00, per hour. There is no support for these rates as the attorneys performing the work are not identified. As it is the burden of the party seeking fees to provide such support, accordingly, we reduce the rate billed for these tasks to $165 per hour. This represents the rate of the two least expensive members of plaintiff's legal team. This amounts to a reduction of $5,450.

We also disallow several entries which detail clerical tasks that need not be performed by attorneys, such as time spent filing motions or photocopying. *See Spegon*

---

²(...continued)
should ignore the fact that this is a Title VII –as opposed to a § 1983 -- case. While this may have been an interesting issue if defendant had bothered to develop it, we will simply find it has not met its burden of establishing the applicability of issue preclusion in this case.

5

*v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999)(the district court should disallow time spent on what are essentially clerical or secretarial tasks). In this regard we note that plaintiffs billed out 6.2 hours on these types of clerical tasks (2/13/98; 8/13/98; 2/9/99; 3/7/00; 3/14/00; 5/17/00; 2/1/01; 2/26/01) at attorney rates, adjusted above to $165 per hour. Additional attorney hours billed for clerical tasks include .9 hours at $195 per hour (3/15/95; 1/31/97) and 1.3 hours at $165 per hour (1/21/97; 1/31/97). This amounts to a further reduction of the lodestar figure by $1,413.

Plaintiff submits that Berks spent 5.7 hours completing the three-page IHRC complaint, at a rate of $165 per hour. This obviously involved at least a certain amount of reliance on boilerplate and cutting and pasting: the plaintiff is referred to as "he" in the document. As the plaintiff submits that this is counsel's area of specialization, we allow only half of this amount billed for a reduction of $940.50. During the completion of the document, there is also a double billing of the same task (1/9/96; 1/19/96) allowing a further reduction of $33. Finally, Stein bills an additional $107.50 to review what should have been a very simple and ordinary document. This, too, will be disallowed.

The record also reveals inaccurate billing regarding the IHRC hearing. Stein bills for two days of nine-hour hearings at $215 per hour; the hearing actually lasted just 7.5 hours both days (5/6/97; 5/7/97). This allows for a reduction of $645. In addition, we note that Kahn bills 9.7 hours at $165.00 for review of the opening statement for the hearing on the first day of the hearing, May 5, 1996. This seems either exaggerated or
6

impossible, given the time frame and the fact that the entire hearing lasted just 15 hours. Accordingly, we reduce this by half for a reduction of $802.25. Furthermore, it would appear that counsel double billed for time spent at a status hearing on May 17, 2000. We adjust that entry by reducing it by $247.50. Finally, we disallow the hours spent on motions for extensions of time for a further reduction of $247.50. *See Prak v. Chater*, 908 F.Supp. 555, 557 (N.D.Ill. 1995). Review of the plaintiff's petition, then, results in a reduction of $9,886.25 to her requested fee award of $60,661.50. Accordingly, this leaves the "lodestar" figure at $50,775.25.

## B. <u>Further Factors</u>

Once the court arrives at the lodestar figure, it may then adjust the award in light of the so-called *Hensley* factors:

> 1) the time and labor required; 2) the novelty and difficulty of the question; 3) the skill requisite to perform the legal services; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3, 103 S.Ct. at 1937 n.3; *People Who Care*, 90 F.3d at 1310 n.1. Many of these factors are subsumed in the lodestar calculation. *Hensley*, 461 U.S. at 434 n.9, 103 S.Ct. at 1940 n.9; *People Who Care*, 90 F.3d at 1307. In a lodestar

7

adjustment, the "results obtained" are an important factor, *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940, but are not always a dispositive factor in civil rights litigation.

Unlike most private tort litigants, a civil rights litigant seeks to vindicate rights that cannot be valued solely in monetary terms. *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694 (1986). "The public as a whole has an interest in the vindication of the rights conferred by [civil rights] statutes . . . over and above the value of a civil rights remedy to a particular plaintiff . . ." *Id., quoting Hensley*, 461 U.S. at 444 n.4, 103 S.Ct. at 1945 n.4. (Brennan, J., concurring in part and dissenting in part). The plaintiff in such litigation acts as a "private attorney general" enforcing a policy that Congress considered of the highest importance. *Id.* Congress enacted these fee-shifting provisions specifically because the private market for legal services was such that the ordinary citizen could not afford to purchase legal services at prevailing rates. *Id.* at 576, 106 S.Ct. at 2695.

The instant case, however, was not a ground-breaking class-action vindication of constitutional rights. Plaintiff's recovery was private, and she was unsuccessful in her pursuit of equitable relief. "Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 575 (1992). In such a case, the results obtained may be the court's central consideration, over the other eleven *Hensley* factors; indeed, having

considered the damages awarded, the court may award low fees or no fees without reciting the *Hensley* factors. *Farrar*, 506 U.S. at 115, 113 S.Ct. at 575.

Here, plaintiff sought lost wages in the amount of $85,680. Her attorneys expended nearly that much–according to them, over $70,000–chasing those lost wages. Plaintiff also estimated additional damages–pain, suffering, and punitive damages–at $400,000. She also sought reinstatement before the IHRC, without success. As a result of her pursuit of her claim before the IHRC and the federal court, she received $10,000, and no reinstatement. Her damage award is approximately 2% of the total amount she sought, 11% of her purported lost wages.

Case law in this circuit has held that recovery of less than half of the amount demanded is good reason to curtail the fee award substantially. *Cole v. Wodziak*, 169 F.3d 486, 489 (7th Cir. 1999) (cases cited). On the other hand, the defendant in this case drafted its offer of judgment with the knowledge that plaintiff would seek over $60,000 in fees. Nevertheless, defendant left the question of fees for the court to decide, thereby guaranteeing another round of time-consuming litigation, this time over reasonable attorney's fees as opposed to substantive issues. Its offer of judgment came at nearly the last possible moment allowable under Rule 68, somewhat further undermining the rule's purpose of encouraging early resolution. In addition, defendant does not suggest in its objections that its offer amounted to a "nuisance" settlement: would defendant have incurred $10,000 in fees by proceeding to trial? *See Fletcher v. City of Fort Wayne*, 162

F.3d 975, 976 (7th Cir. 1998)( a compromise for less than the costs of defense is a good working definition of a nuisance-value settlement). Accordingly, we do not find it appropriate to drastically reduce the lodestar figure as was done in cases such as *Wodziak* or *Spegon* but, in light of all the factors discussed, we will reduce it by 20% for an award of $40,620.20 in fees.

### III. CONCLUSION

For the foregoing reasons, plaintiff's petition for fees and costs is GRANTED in the amount of $40,620.20 in fees and $392.62 in costs, and defendant is hereby ordered to pay same.

ENTERED: *Edward A. Bobrick*
Edward A. Bobrick
U.S. Magistrate Judge

DATE: September 4, 2001